# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOE CRUZ,

        Plaintiff,

      v.                                                                                    No. CIV-09-335 WPJ/LFG

MARTIN J. CHÁVEZ, Individually and
in his Official Capacity as Mayor of the City
Of Albuquerque; RAY SCHULTZ,
Individually and in his Official Capacity
as Chief of Police of the City of Albuquerque;
JOSÉ CARRASCO, Individually and in his
Official Capacity as an Officer of the Albuquerque
Police Department; SHAWN HANCOCK,
Individually and in his Official Capacity as an
Officer of the Albuquerque Police Department;
JOHN AND/OR JANE DOES 1 through 8,
Individually and in their Official Capacities
as Officers of the Albuquerque Police Department;
THE CITY OF ALBUQUERQUE, Albuquerque
Police Department, a Municipal Entity Organized
Under the Laws of the State of New Mexico and
its Law Enforcement Agency,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

       THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment As Against All City Albuquerque Defendants, filed May 10, 2010 **(Doc. 47)**. The only response filed is that of Defendant Carrasco. Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is not well-taken and shall be denied.

**Background**

Plaintiff Cruz claims that he was wrongfully incarcerated by Defendants, in violation of his Fourth and Fourteenth Amendment rights.  He contends that a finding in the related criminal case that there was no probable cause to search and detain Plaintiff entitles him to summary judgment in the instant civil case.  The Complaint alleges claims of municipal and supervisory policy in Count I; "Unreasonable Seizure (Illegal Arrest and Detention") in Count II; and malicious prosecution in Count III.  Plaintiff seeks punitive damages against Defendant Carrasco in his individual capacity. However, according to the Pretrial Order, Plaintiff has agreed to the dismissal of his claims for municipal and supervisory liability against Defendants Chavez, Schultz and the City of Albuquerque, and that the City of Albuquerque shall remain a party defendant for purposes of claims of *respondeat superior* under the New Mexico Tort Claims Act, which claims are denied (Doc. 58 at 2-3).

Although Mr. Cruz was a defendant in the related criminal case, the Court will refer to him as "Plaintiff" or "Cruz" herein in order to reduce confusion.

**I.      The Complaint**

The 50-page Complaint in this case is factually dense and somewhat difficult to follow as a chronological presentation of the facts.  The Complaint, in addition to Plaintiff's own allegations presented to support his claims, also contains: (a) statements made by Defendants and witnesses during a state court bond hearing which took place three weeks after the incident giving rise to this civil action; (b) allegedly inconsistent statements made by Defendants taken from the transcript of the criminal suppression hearing in the related criminal case, *U.S. v. Cruz*, Crim. No. 05-1485 MV (attached as Exhibit 1 to Mot. for Sum.J); and (c) a description of the facts "gleaned directly from the Court's Memorandum Opinion and Order" issued by Chief U.S.

District Judge Martha Vázquez which granted the motion to suppress (attached as Exhibit 2 to Mot. for Sum. J).

Judge Vázquez's Memorandum Opinion and Order sets forth in great detail the different versions of the underlying events. The Complaint also tracks all the pertinent facts relative to the different accounts of what happened on the night at issue. Thus, the Court finds it unnecessary to repeat those facts in particular detail, and will instead sum up the facts in a narrative sufficient to address the instant motion.[1]

## II.     Factual Background

As best that can be ascertained, the undisputed facts are as follows: On January 12, 2005, Plaintiff was driving a 1997 gold Mercury station wagon in Albuquerque, New Mexico. Two passengers were riding in Plaintiff's car at the time of the stop, Trevor Westerman ("Westerman") and Davis Salinas ("Salinas"). At approximately 1:00 a.m., Plaintiff was stopped by Albuquerque Police Officer Jose Carrasco ("Carrasco")  after Carrasco observed Plaintiff's vehicle swerve twice across the middle line of his lane with over half of his vehicle. Carrasco engaged his lights and signaled for Plaintiff to pull over. Plaintiff drove for about one block and then pulled over halfway into a nearby driveway. Upon approaching the driver's side of the vehicle, Carrasco saw that the temporary license plate on the vehicle referred to a 1993 blue Ford. Following the initial stop, Carrasco proceeded to question Plaintiff, Westerman and Salinas.

A.     <u>Westerman and Salinas</u>

---

[1] For ease of reading, the Court omits references to the suppression hearing transcript, and instead will refer where necessary to paragraphs in the Complaint which cite to pertinent portions of the transcript.

It appears undisputed that both Westerman and Salinas were high on methamphetamine on the night at issue. Ex. 1 at 24. According to Carrasco, both Westerman and Salinas were "moving around" and "hiding their hands between their legs," Compl, ¶ 29, and Westerman admitted at the motion to suppress that he may have been "moving" because he was high on speed. Ex. 1 at 18. Both individuals responded to Carrasco's inquiry in the negative when asked if they had a New Mexico driver's license or I.D. Salinas initially lied to Carrasco about his name and social security number.

The Complaint asserts that at the suppression hearing, Carrasco's testimony was inconsistent regarding whether either Westerman or Salinas had committed a crime, or whether anything suspicious was going on. At one point, Carrasco stated that he had a slight suspicion of DWI, but that his focus was on safety in that he feared Westerman or Salinas were going to draw a weapon; he later stated that the only suspicion he had was that they were concealing their identities.

Officer Hancock ("Hancock") responded to Carrasco's call for back-up. At the suppression hearing, Hancock testified that he asked Westerman for his name and identification, and that Westerman produced a false I.D. with the name "Tom Metcalf." Hancock removed Westerman from the car, patted him down for weapons, and placed him on the curb. Parties dispute whether Hancock removed Westerman from the vehicle before or after he asked Westerman for his name and identification. A pat down search did not result in any weapons found. According to the police report, Westerman was arrested for concealing his identity. The report also states that a search of Westerman incident to arrest revealed a plastic container holding two small baggies of a white powdery substance, and another baggy of a "black gummy substance" which the police report indicates was field tested as methamphetamine and heroin.

Compl., ¶ 32.

Carrasco discovered through a computer check that Salinas had a misdemeanor warrant for his arrest. Carrasco placed Salinas under arrest for the warrant, handcuffed him and began a search, which uncovered no weapons or contraband.

B.   Plaintiff Cruz

In response to Carrasco's initial questioning, Plaintiff stated that he had a valid drivers' license, but did not have it with him, and did not have the registration or insurance for the vehicle because the car belonged to his car lot business. Plaintiff furnished Carrasco with correct personal information. On that evening, Carrasco was working as a "DWI saturation officer" looking for DWI suspects. According to the Complaint, Carrasco described Plaintiff as having "droopy, blood-shot eyes" and "slurred speech," but did he did not ask Plaintiff whether he was under the influence of alcohol or drugs, or conduct a DWI investigation at that time. Compl., ¶ 28.

After Carrasco completed his interrogation and arrest of Salinas, approximately ten to fifteen minutes after the initial stop, he approached Plaintiff and asked him to exit the vehicle. Carrasco had Plaintiff walk to the rear of the vehicle and patted him down. The basis for Carrasco's detention at this point was hotly disputed in the criminal suppression hearing: whether Plaintiff started moving around while Carrasco was questioning Salinas and whether Carrasco had a suspicion or fear that Plaintiff had a firearm or weapon on his person.

Officer Carrasco testified at the suppression hearing that while conducting the pat down of Plaintiff, he "felt a wallet [in Defendant's back pocket] and asked him what it was." Compl., ¶ 41. Carrasco said that he asked Plaintiff if he could take out the wallet, and Plaintiff consented. Carrasco removed the wallet and dropped it to the ground. When the wallet hit the ground, it fell

open, and Carrasco was able to see a New Mexico Identification Card inside.  Compl., ¶ 41. The identification card had Plaintiff's picture on it, but had the name of "Patrick Tafoya" on it and appeared to be fake. Carrasco then placed Plaintiff under arrest for Altering an Identification card, handcuffed him and searched him incident to an arrest.  It is not clear, based on Carrasco's own testimony at the suppression hearing, whether Carrasco placed Plaintiff under arrest *before* or *after* removing Plaintiff's wallet I.D.  Compl., ¶ 44; Ex. 1 at 8, n.8.  Carrasco's inventory search of the vehicle uncovered the following items from the center console of the car: a loaded Keltech .32 caliber handgun with a round in the chamber; a syringe, two measuring spoons, a box containing 249 red Sudafed pills and another box containing over 350 white SU-24 [Sudafed] pills.  Plaintiff was arrested by Carrasco, and assisted by Hancock in the arrest.

### III.     Subsequent Court Findings in Criminal Case

On November 21, 2006, a suppression hearing was held before Judge Vázquez in the criminal case which resulted from Plaintiff's arrest, *U.S. v. Cruz*, Crim. No. 05-1485 MV.  In her Memorandum Opinion and Order, *see* Doc. 75 in *U.S. v. Cruz*, Judge Vázquez found that the initial *Terry* stop was justified, based on testimony by Salinas and Westerman that Plaintiff Cruz swerved while driving, as well as their testimony that Plaintiff was under the influence of drugs while driving his car.[2]  Judge Vázquez also found that Plaintiff's further detention was justified based on the totality of the circumstances: Cruz had no proof of ownership of the vehicle, no proof of authority to operate the vehicle, no insurance and a temporary license plate belonging to another vehicle. Additionally, Salinas testified that Defendant acted as if he were high. Thus,

---

[2]  The breadth of detail in Judge Vázquez's Memorandum Opinion and Order is considerable; thus, the Court recites only the findings from Judge Vázquez's Memorandum Opinion and Order which are relevant to the resolution of the instant summary judgment motion.

Carrasco would have been justified in continuing to question Cruz, to issue a citation, or to conduct a DWI investigation. However, Carrasco did none of these things, and instead, as Judge Vázquez found: ". . . the detention quickly moved away from its initial justification, namely a traffic violation and possible DWI, to an all out investigation of Defendant and the passengers for evidence of other crimes. Thus the detention exceeded its lawful scope." Ex. 1 at 28-29.

Judge Vázquez made credibility findings which had a substantive effect on her rulings. The Suppression Order concluded that the testimony of Westerman and Salinas was "credible, but not entirely reliable given the fact that they were both admittedly high on methamphetamine on the night at issue." Ex. 1 at 24. Judge Vázquez found Hancock's testimony to be "questionable." Ex. 1 at 25. As for Carrasco, Judge Vázquez afforded his testimony "no weight" at all. Ex. 1 at 29. The Suppression Order described Carrasco as a "moving target"; his answers as "self-serving," changing "to fit the scenario best supporting his position at the time"; and his actions as "often inconsistent with his statements." Ex. 1 at 23. The Suppression Order minced no words regarding the effect of Carrasco's testimony on the Court:

> Having observed Officer Carrasco and reviewed his testimony in painstaking detail, this court finds Officer Carrasco's testimony lacks veracity and his motivation was solely to cover his own mistakes and bolster his conduct. The dubious nature of Officer Carrasco's testimony is not limited in scope, but touches upon matters of considerable importance to the issues pending before this court, as well as matters that are only significant to the extent they reflect upon his credibility. Based upon the numerous inconsistencies in Officer Carrasco's testimony that affect matters critical to this court's determination of the issues before it, the court finds Officer Carrasco's testimony is not credible, and must be given no weight and wholly disregarded.

Ex. 1 at 24.

As a result of Judge Vázquez's credibility findings with regard to Carrasco, the legality of Carrasco's conduct came to a halt with the pat down, or *Terry* frisk. Judge Vázquez stated

that "an objective examination of the totality of the circumstances does not support a finding that Officer Carrasco had a reasonable articulable suspicion that Defendant was armed and dangerous to justify a pat down search." Ex. 1 at 29.  Also, because she found Carrasco not to be credible, Judge Vázquez disregarded Carrasco's testimony that Plaintiff had consented to the removal of his wallet, largely because "no one else admitted hearing such a statement." Ex. 1 at 33.  She further found that even if Plaintiff had given consent, the seizure of the wallet and its contents were illegal because it immediately followed the illegal pat down search. Ex. 1 at 33.  Judge Vázquez ultimately concluded that Carrasco did not have probable cause to search Plaintiff, and granted Cruz' motion to suppress all evidence seized as a result of the search:

> Officer Carrasco violated Defendant's Fourth Amendment rights on the night at issue and then proceeded to compromise the integrity of the court proceedings by his testimony. Suppression of the evidence is necessary to deter similar police conduct and to maintain the probity of the court. Consequently, all the evidence discovered by the police following the illegal *Terry* search of Defendant, including any alleged admissions made by Defendant, shall be suppressed as "fruits of the poisonous tree."

Ex. 1 at 35. As a result of the suppression of the government's primary evidence, the case was dismissed without prejudice.

## DISCUSSION

Plaintiff seeks summary judgment motion relying on Judge Vázquez's rulings on the motion to suppress.  Also, Plaintiff argues that Defendant has not offered any legal basis to grant Defendant qualified immunity or any facts which, under the totality of circumstances, would preclude summary judgment for Plaintiff.

### I.   Whether Judge Vázquez's Decision Has Preclusive Effect in the Civil Case

Plaintiff asks that this Court find Judge Vázquez's rulings in the criminal proceeding as binding on a determination of probable cause in this civil lawsuit.  Plaintiff alleges that the

Defendant officers at the scene unlawfully detained him, and that Officer Carrasco did not have probable cause to conduct a pat down search.³  Thus, because the pat down search was illegal, his subsequent arrest for forgery, possession of drugs, and possession of a handgun violated his Fourth Amendment rights.

Defendant's position is that Judge Vázquez's rulings on the motion to suppress in the criminal case are not binding in this civil lawsuit.  Also, there is a question of what damages Plaintiff has suffered as part of this civil lawsuit.  Defendant notes that at the time of his arrest on the evening of January 12, 2005, Plaintiff was on conditional release in an unrelated separate criminal matter. As a result of that arrest, conditional release in the other matter was revoked and Plaintiff remained incarcerated through trial on that matter. Cruz was found guilty of the unrelated charges and sentenced to prison.  Thus, Defendant contends that his lengthy incarceration was "in no way related to his arrest on January 12, 2005." Doc. 58 at 4 (Pretrial Order).

Defendant contends that the doctrine of issue preclusion, namely collateral estoppel, does not apply with regard to Judge Vázquez's findings in the criminal case.  The Court agrees with Defendant's analysis and conclusion.

In order to assert collateral estoppel in this manner, Plaintiff must establish that: (1) the issue decided in the criminal case was identical to the issue in this case; (2) the criminal case resulted in a final adjudication on the merits; (3) the defendant was a party to the criminal case or in privity with the United States; and (4) the defendants had a full and fair opportunity to litigate the issue in the criminal case. *Trujillo v. Simer*, 934 F.Supp. 1217, 1224 (D.Colo.,1996)

---

³ Since Judge Vázquez found the initial stop to be justified, the Court assumes that Plaintiff does not challenge the legality of the initial stop.

(citing *Orjias v. Stevenson*, 31 F.3d 995, 1010 (10th Cir. 1994)).  In *Trujillo*, the homeowner plaintiffs could not rely on a finding of a Fourth Amendment violation in a prior criminal case against them, and that finding could not be used to collaterally estop the individual law enforcement officers from defending civil rights claims asserted against them.  The court in *Trujillo* noted that collateral estoppel was not applicable because the individual defendants were not parties in the criminal case and were not in privity with the United States, on whose behalf the criminal case was brought. The prosecutor of the criminal case was representing the federal government, and not the interests of the defendant officers in the civil lawsuit; the defendant officers had no control over how the criminal case was handled, and no ability to appeal the judge's decision. Thus, the court concluded, there was no privity between the United States and the individual defendant officers in the civil case.

       The Tenth Circuit affirmed a similar decision in *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105 -1106, n.1 (10th Cir. 1998).  In that case, the plaintiff filed a civil lawsuit alleging violations of 42 U.S.C. § 1983 against the officer defendants for false arrest and unlawful seizure, and state claims based on malicious prosecution under the Oklahoma Tort Claims Act.  Prior to filing the federal lawsuit, the Oklahoma state court had dismissed a criminal proceeding against plaintiff that involved charges of reckless driving, operating an overweight vehicle, and listening to police broadcasts.  Plaintiff's federal lawsuit was dismissed on summary judgment granted to defendants, and Plaintiff appealed, arguing that he was precluded from reexamining the legality of the search and seizure of his truck and his arrest by a prior state court determination which found no probable cause to prosecute. The Tenth Circuit affirmed the district court's ruling that plaintiff could not use issue preclusion against the defendant officers because under Oklahoma law, the officers were not in privity with the State of Oklahoma.  Because the officers were being

sued in their individual capacities, their personal interest, which were not at stake in the criminal proceeding, differed from the interests of the state.

For similar reasons, Plaintiff in the instant case cannot use collateral estoppel to bind Judge Vázquez's rulings in the criminal case to the issues presented in the civil lawsuit. The elements of collateral estoppel are not met. In the criminal case, Carrasco was a witness for the prosecution, and not a party or in privity with the parties in that case. He had no control over the prosecution of the criminal case. Thus, Carrasco is not precluded from reexamining the legality of the detention, search and arrest of Plaintiff solely because Judge Vázquez found no probable cause to extend the detention or probable cause to search Plaintiff.

Accordingly, the Court takes judicial notice of Judge Vázquez's rulings set forth in the Order granting Cruz' motion to suppress in the criminal case. *See St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it) (citing *Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972)). However, the Court's findings on the summary judgment motion in this case will be written on the proverbial clean slate.

## II.     Whether Plaintiff is Entitled to Summary Judgment

Plaintiff contends that Defendant offers no factual dispute to challenge the undisputed facts in this case, and therefore he is entitled to summary judgment. Defendant has asserted the defense of qualified immunity.

A.     Legal Standards

In the response, Defendant Carrasco asserts the defense of qualified immunity, which requires that Plaintiff bear a "heavy two-part burden" of demonstrating that (1) Carrasco violated

a constitutional right and (2) the constitutional right which is alleged was clearly established at the time of the alleged conduct. *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir.2007). If Plaintiff meets this burden, then the analysis moves on to the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002). In this case, because Plaintiff is the movant, Plaintiff must show there are no material disputes of fact, and Defendant Carrasco must present such disputes in order to withstand summary judgment.

The Court makes no credibility findings in ruling on a motion for summary judgment. Rather, all justifiable inferences are to be drawn in favor of the Defendant as the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002). The credibility issue is critical to Plaintiff's motion, because the facts on which Plaintiff relies have been filtered through the credibility findings made in Judge Vázquez's Order on the suppression hearing. However, those findings are not binding on Carrasco for the same reason as the probable cause findings are not binding. Carrasco's credibility was not an issue that was fully and fairly litigated in the criminal case, and Carrasco was a witness – not a party – to the proceeding. *Cmp., Gouskos v. Griffith*, 122 Fed.Appx. 965, 974, 2005 WL 375858, 8 (10th Cir. 2005) (noting that plaintiff alleging false arrest and excessive force in civil suit was entitled full and fair adjudication on credibility determination where factual disputes existed). To be sure, Carrasco may ultimately be found to be not credible by the fact finder, but such a finding is premature at this point. As a result, if Defendant offers material facts which dispute the facts presented by Plaintiff, the Court views those facts favorably to Defendant, and Plaintiff is not entitled to summary judgment.

B.    <u>Whether Law Was Clearly Established</u>

The Court agrees with Plaintiff that the contours of the relevant law were sufficiently clear such that a reasonable officer would know the alleged conduct was unlawful in the situation he confronted. The reasonableness of an investigative detention is analyzed under a dual inquiry. First, the Court examines "whether the officer's action was justified at its inception;" and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *U.S. v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (*quoting Terry*, 392 U.S. 1at (1968)). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).

A warrantless pat down search of a suspect is justified only "if the officer harbors an articulable and reasonable suspicion that the person is presently armed and dangerous." *U.S. v. Wald*, 208 F.3d 902, 906 (10th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 27)). Further, if the protective search "goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (citation omitted).

Defendant points out that there is a "distinction between the reasonableness standard for warrantless searches and the qualified immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 203 (2001). It is possible for an officer to violate an individual's Fourth Amendment rights by conducting an unreasonable, warrantless search, and still be entitled to qualified immunity for reasonable mistakes as to the legality of their actions. *Id*. at 202 (noting distinction between the substantive Fourth Amendment "reasonableness" inquiry and the qualified immunity inquiry). This is a correct statement of the law, but it does not apply here. There are no facts alleged or

13

presented which afford any wiggle room in a Fourth Amendment context. Plaintiff alleges that the detention exceeded its lawful scope. It is undisputed that Cruz had no proof of ownership of the vehicle, no proof of authority to operate the vehicle, no insurance and a temporary license plate belonging to another vehicle. Thus, Carrasco would have had a legal basis to prolong the detention in order to question Cruz further, issue a citation or conduct a DWI investigation. *See* Compl., ¶¶ 40, 114; Ex. 1 at 28. However, Defendant is not entitled to qualified immunity because it would have been clear to Carrasco that the alleged conduct – prolonging Cruz' detention without tailoring it to the reason for the initial stop – would have violated Cruz' Fourth Amendment rights.[4]

C.    Whether Plaintiff is Entitled to Summary Judgment

Defendant may still withstand summary judgment by demonstrating that there are material facts in dispute which must be resolved by a fact finder. The parties have different versions regarding whether Plaintiff consented to have his wallet taken out and searched and when Plaintiff was actually arrested. Judge Vázquez noted that the basis for Plaintiff's arrest were the items found as a result of the pat down (the false I.D. in Plaintiff's wallet, the handgun, and drug paraphernalia), and that these items which the prosecution sought to be admitted in the criminal case were obtained "by exploitation" of an illegal search. Ex. 1 at 31. Thus, the facts which are critical and material for purposes of this motion are those which center around the pat down search.

---

[4] In determining whether the law was clearly established, the Court is required to look at the facts as alleged by Plaintiff, even though the Court views the facts favorably to Defendant in the normal summary judgment analysis. *See*, *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985) (framing the issue as whether the "*facts alleged by plaintiff* support a violation of clearly established law of which a reasonable person would have known") (emphasis added); *Davis v. Scherer*, 468 U.S. 183, 191 (1984).

Defendant presents the following facts by way of presenting a justifiable and legal basis for the pat down search of Plaintiff:

1.	Plaintiff did not stop when Officer Carrasco initiated the traffic stop, at approximately 1:00 a.m., but kept driving, turning down an adjacent street where he attempted to pull into a driveway.

2.	The temporary tag on Plaintiff's vehicle did not match the make or model of the car.

3.	The passengers and Plaintiff were moving around in the car as if they were trying to conceal something, and this behavior continued even after being warned to put their hands were Officer Carrasco could see them.

4.	Plaintiff could not provide proof that he was authorized to drive the car, i.e. he did not have a driver's license, nor did he have proof of insurance or registration. Plaintiff told Officer Carrasco the car belonged to his father's business.

5.	The two passengers had given false names in an effort to conceal their identity.

6.	The NCIC check revealed that Salinas had an outstanding warrant for arrest, and presumably revealed Plaintiff's extensive criminal history as well.

7.	Officer Carrasco was concerned enough to call for backup.

Most of these facts – ## 1, 2, 4, 5 and 6 – do not justify converting the traffic stop and detention into a reason to pat down Plaintiff.  It is undisputed that Plaintiff's swerving of the vehicle over the mid-line provided a legal basis for the traffic stop.  The non-matching temporary tag on Plaintiff's car, and Plaintiff's inability to furnish a driver's license or proof that he was authorized to drive the car also does not convert the stop into a reason to conduct a pat down search of Plaintiff.  The false I.D.'s given by Westerman and Salinas, and the existence of an outstanding warrant for Salinas do not extend by association to Plaintiff sufficiently to justify a pat down search on his person.

On the other hand, several of the facts, when viewed favorably to Defendant, create material disputes of fact as to whether Carrasco was justified in conducting a pat down search of

15

Plaintiff. Carrasco testified that during the initial stop, he observed Westerman and Salinas moving around in the car, and "moving their hands between their legs." Ex. 2 at 23:23-25. He also testified that while he was searching Salinas, he noticed Cruz turn his body, "like he was trying to hide something or put something like in the center console, or in between the seats." Ex. 2 at 32:3-11.

Plaintiff argues that Carrasco's statements are "conclusory and self-serving." Reply at 6. Vague, conclusory statements do not create a genuine issue of material fact. *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000). However, Carrasco's statements are not conclusions; they are observable facts. Plaintiff also argues that these statements were dismissed by Judge Vázquez as lacking in credibility, but as previously mentioned, credibility determinations made in the criminal suppression hearing are not binding in this civil case.

The reasonableness of a pat down is "measured in objective terms by examining the totality of the circumstances." *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001). Under such an examination, Defendant has offered facts sufficient to create a material issue of fact regarding whether Carrasco had a reasonable, articulable suspicion that Cruz was armed and dangerous: the temporary tag did not match the tag on Plaintiff's car; and Plaintiff could not provide a driver's license when requested, or proof that he was authorized to drive the car; Plaintiff and both passengers were moving around in the car as if trying to conceal something, and this behavior continued even after being warned to put their hands where Carrasco could see them. Given these circumstances, it would also be reasonable to a fact finder that an officer would be justified in having a real safety concern, sufficient to prompt him to call for backup and sufficient to prompt the officer to conduct a pat down search of Plaintiff.

**Conclusion**

In sum, the Court finds and concludes that Chief Judge Vázquez's decision, or findings regarding credibility, in the criminal proceeding granting Plaintiff's motion to suppress do not have preclusive effect in this civil lawsuit.

The Court further finds and concludes that Defendant has presented a material factual dispute regarding whether Carrasco had legal justification to conduct a pat down search of Plaintiff.[5]

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment As Against All City Albuquerque Defendants **(Doc. 47)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Parties do not address the alleged malicious prosecution claim, and for that reason, the Court makes no findings on that issue.